NORTH AMERICAN RAYON CORPORATION, f.k.a. NORTH AMERICAN HOLDING CORPORATION, NARCO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
North Am. Rayon Corp. v. Commissioner
Docket No. 8510-89
United States Tax Court
T.C. Memo 1992-610; 1992 Tax Ct. Memo LEXIS 642; 64 T.C.M. (CCH) 1079; October 14, 1992, Filed *642 Decision will be entered under Rule 155. Held: Petitioner's predecessor is bound by allocation of purchase price set forth in Asset Sale Agreement where both buyer and seller were controlled by the same individuals. For Petitioner: H. Wynne James III and William Hume Barr. For Respondent: Vallie C. Brooks. WHITAKER
WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Year Ended
Deficiency
9-30-80
$ 421,462
9-30-82
160,555
9-30-84
218,000
9-30-85
13,792
After concessions, the sole issue for decision is petitioner's basis for depreciation of depreciable assets purchased under an Asset Sale Agreement. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner's principal place of business was in Elizabethton, Tennessee. Petitioner was organized in 1978 as a New York corporation in contemplation of the purchase of assets from Beaunit Corporation (Beaunit) and its wholly owned subsidiary, Carter County Fibers, *643 Inc. (Carter County). Petitioner manufactured filament rayon and was the largest domestic manufacturer of that product. During each of the years in issue, petitioner maintained its books and records on the accrual method of accounting, and used that method for purposes of computing its income for Federal income tax purposes. Petitioner entered into an Asset Sale Agreement (the Agreement) dated October 30, 1978, to acquire a viscose manufacturing plant in Elizabethton, Tennessee, from Beaunit and Carter County. The Agreement allocated $ 1,000,000 of the purchase price to fixed assets. The final price for inventory calculated under the formula in the Agreement was $ 4,064,127. Petitioner on its tax returns allocated the total sale price in accordance with an appraisal of the assets prepared for Beaunit in 1977, and on the standard cost of inventory. Contrary to the allocation used by petitioner on its books, Beaunit, in preparing its Federal income tax return for the year of sale, utilized a sale price for the assets calculated in conformity with the Agreement. The allocation method used by petitioner resulted in a depreciable fixed asset base considerably higher than the allocation *644 in the Agreement created. Respondent contends that the allocation in the Agreement should control. On the date of the sale, petitioner and Beaunit were controlled essentially by the same individuals and were represented by the same law and accounting firms. It is unclear on this record how the total sale price was determined, or who in fact made the allocation of the sale price between inventory and the other assets in the Agreement. Petitioner's shareholders who were involved at the time of the transaction all were aware of the aggregate sale price, but there were no arm's-length negotiations between petitioner and Beaunit with respect to either the sale price or its allocation. It seems probable that the allocation was determined either by petitioner's and Beaunit's New York attorney or by their accountants. In June 1980 all the stock of petitioner then owned or controlled by individuals, most of whom also had been shareholders of Beaunit, was sold to North American Holding Corporation (NARCO) which became petitioner's parent, or was redeemed by petitioner at a price of $ 35,000 per share. In 1988 petitioner merged with NARCO, with petitioner being the successor corporation. *645 NARCO filed consolidated tax returns for the years at issue. The assets purchased by petitioner comprised a going concern which never ceased operations. Petitioner's business was profitable for its first 4 years of operation and it continued in operation through the date of trial. OPINION Respondent relies principally on the cases of , vacating and remanding , and . Danielson and Schatten stand for the proposition that when parties to an agreement negotiate the values of assets being sold they are bound by their agreement in the absence of undue influence, fraud, duress, and the like. Petitioner argues that the exception in the Danielson rule should apply in that undue influence was exerted over petitioner. Petitioner relies on , and . Petitioner's contention is that, if an allocation in a contract *646 is economically unrealistic or is not the result of arm's-length dealing between parties with adverse tax interests, it should be ignored. We agree with respondent that the rule set forth in Danielson is applicable in this case, and, consequently, that petitioner is bound by the allocation stated in the Agreement. This Court has not adopted the Danielson rule as set forth by the Third Circuit, which provides that "a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." (quoting ; , affd. without published opinion ; . The standard applied *647 by this Court is the less stringent "strong proof" rule. . It requires the taxpayer to present "strong proof", that is, more than a preponderance of the evidence, that the terms of the written instrument do not reflect the actual intentions of the contracting parties. ; . However, the Sixth Circuit, to which an appeal in this case would lie, has indicated its acceptance of the Danielson rule. , affg. a Memorandum Opinion of this Court; . See , affd. , cert. denied . The allocation was advantageous to Beaunit from a tax standpoint, and was in fact used by Beaunit in its tax *648 return. Conversely, the allocation was disadvantageous to petitioner; that is the agreement reached by the parties controlling both Beaunit and petitioner, and the record is devoid of any evidence of mistake, undue influence, fraud, or duress. Consequently, in accordance with the Danielson rule as adopted by the Sixth Circuit, petitioner is bound by the allocation set forth in the Agreement. Decision will be entered under Rule 155.